## Woolman v. Hancock Ice Company, Appellant.

*Contract—Evidence—Question for jury.*

Where the evidence is conflicting the determination whether a contract existed and what were its terms, is for the jury to find from the testimony. Each party is entitled to give his version of the contract and their opposing claims cannot be peremptorily ruled by the court.

In an action to recover the price of stone, where the evidence is conflicting as to whether the object for which the stone had been ordered was abandoned, because of the delay of the plaintiff in beginning the delivery of the stone, the case is for the jury.

Argued Oct. 9, 1901.    Appeal, No. 272, Oct. T., 1900, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1898, No. 144, on verdict for plaintiff in case of Samuel C. Woolman v. John Hancock Ice Company.    Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ.    Affirmed.

Assumpsit for price of stone.    Before WILLSON, J.

At the trial it appeared that plaintiff claimed to recover $900 for breach of a contract to purchase 200 carloads of stone, which the defendant had refused to accept.    The evidence as to the existence of the contract was conflicting. There was evidence offered by the defendant, but contradicted by the plaintiff, to the effect that the purpose for which the stone had been ordered had been abandoned because of plaintiff's failure to begin delivery in time.

The court charged in part as follows:

[As I understand, it is claimed on the part of the plaintiff that this contract was made between the plaintiff and Mr. Hancock, as representing the John Hancock Ice Company,

some time in the early part of 1897, and that it was a contract which was made by word of mouth, but that it was a definite bargain, in which all the terms were fixed, and by which the parties became bound to each other.   There is no doubt that if there was such a bargain made and finally concluded between the parties and not reopened subsequently, it was just as good as any contract; that is, that it was not necessary it should be put in writing. . . . If you come to the conclusion that plaintiff has established an oral contract, you will have to take up one or two other points.] [2]

[If the plaintiff entered into a contract with the defendant company through its president, whereby it was agreed between them that the plaintiff should furnish a certain quantity of stone to the defendant at or about a given time for a certain price, deliverable in a certain way, as is alleged here, and he went on and got in readiness to do that and was ready to do it and failed to make the delivery of the stone because he was notified by the defendant company, through its president, before the time of delivery, that the delivery was not wanted, the stone would not be received, then the plaintiff has a right to a verdict for the amount which he lost in the matter.   That loss would be arrived at by taking the contract price, throwing off what it would cost for the plaintiff to deliver the stone, and, also, what the value of the stone was which he said he had quarried, or what the cost of quarrying it would have been, although I believe there is no evidence upon that point, and upon the figure which should remain, plus interest, if you think that interest should be allowed, the plaintiff would be entitled to a verdict if he has made out his case on all points.] [3]

Verdict and judgment for plaintiff for $580.   Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant.   (2, 3) Above instructions, quoting them.

*John G. Johnson,* with him *Edwin S. Dixon,* for appellant.

*M. Hampton Todd,* for appellee.

OPINION BY ORLADY, J., January 21, 1902:
If there was not some contractual undertaking on the part

of the defendant to receive and pay for quarry stone to be used in building a dam on its property, it is difficult to understand the preparations made for receiving the stone by extending the icehouse siding, or why the defendant's foreman (Trumbauer) was directed to go to the plaintiff's quarry to arrange for the shipment of the stone. The reason for abandoning the building of the lower dam was independent of the making of the contract, and of the plaintiff's failure to comply with its terms. The defendant's president, in reply to a question, " How do you know they were not ready on the first of June?" stated as follows: "Smith, the contractor, went down there two or three days before and they were not ready, and he went down the next week and they were not ready, and I said we will have to abandon it, we will have to spend a lot of money fixing the old dam up ; " and again, " It was too late when he could not start the dam on the first of June." The plaintiff .denied that he was not ready to begin the delivery of the stone at the time stated, but whether he was or not was a·question for the jury. The subsequent correspondence, the conduct of the parties, and the reason given for not receiving the stone were all properly in evidence in order to determine the good faith of the plaintiff's conduct, and of the defense interposed, as well as to whether the plaintiff had not complied with the terms of the contract.

Assuming that there is an ambiguity, as to the measure of damages, in the excerpted parts of the charge of the court, which are combined to form the third assignment of error, an examination of the whole charge shows that the defendant has no reason for complaint on that ground. The jury was instructed that the plaintiff could recover only on an actually concluded contract, such as is set forth in the statement of the plaintiff, and the defendant refused to take the stone without showing satisfactory cause, and that the market value of the stone on hand should be deducted from any claim the plaintiff might have against the defendants. While the evidence of value was meager, as the defendant did not offer any, the jury was obliged to deal with the values submitted by the plaintiff, kept within fair bounds by reducing his claim nearly one half. Where the evidence is conflicting, the determination whether a contract existed, and what were its terms, is for the jury to find

from the testimony. Each party is entitled to give his version of the contract, and their opposing claims cannot be peremptorily ruled . upon by the court : 3 P. & L. Dig. of Dec. 4168. There was sufficient evidence of a parol contract to warrant the court in submitting that question to the jury, and whether it was rescinded so as to relieve the defendant from liability was purely a question of fact.

The assignments of error are overruled and the judgment is affirmed.